**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RUBIN ARNAZ COLLINS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN ROBERT DEAN,<br><br><br>Respondent. | Civil Action No.: SAG-23-3108 |

**MEMORANDUM OPINION**

Petitioner Rubin Arnaz Collins[1] has filed a Petition For Writ of Habeas Corpus. ECF Nos. 1, 1-1. Respondent, the Warden of Jessup Correctional Institution, filed an Answer to the Petition asserting that this Court lacks jurisdiction over some of the claims, some of the claims are time-barred, and the remaining claims lack merit. ECF No. 12. No hearing is required. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2025); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Petition is denied, and a certificate of appealability shall not issue.

**Background**

Collins was indicted on November 18, 2013, in Wicomico County on various counts associated with three separate armed robberies: Case No. 22-K-13-748 (Quick Mart on 10/14/13), Case No. 22-K-13-749 (Vintage Beer & Wine on 10/14/13), and Case No. 22-K-13-807 (7-11 on

---

[1] The state court pleadings associated with Collins's convictions spell his first name "Ruben." However, the hand-written petition Collins submitted in this federal habeas petition spells his first name "Rubin." For this reason, the Court will refer to the petitioner as "Rubin" Collins.

10/3/13). ECF No. 12-1 at 7-8, 13-14, 20-21; ECF No. 12-5 at 21-29. On October 15, 2013, Collins was indicted in Wicomico County on additional charges related to the robberies, including DUI per se, Case No. 22-K-13-269, and resisting arrest, Case No. 22-K-13-270. ECF No. 12-1 at 28-29, 32-34; ECF No. 12-5 at 30-34. For brevity, the cases will hereafter be referred to by the last three digits of the case number.

On May 28, 2013, Collins entered an agreed-to plea on all five cases. ECF No. 12-5. He pled guilty to one count of armed robbery, two counts of robbery, DUI per se, and resisting arrest (*id.* at 18-20) and received the agreed sentence of 17 years of active incarceration. *Id.* at 36-37. During hearing, the state described the factual basis for the plea as follows:

Case No. *748
&
Case No. *749

> On October 14, 2013, Detective Thomas Funk of the Wicomico County Bureau of Investigation was dispatched to assist the Maryland State Police with an armed robbery. Upon arrival Detective Funk was given a brief on the incident by Trooper Riggs who was the initial responding trooper. Trooper Riggs advised Detective Funk that a black, male subject had entered the store which is the Quick Mart located at 7181 Parsonsburg Road, Parsonsburg, Wicomico County, Maryland. Detective Funk interviewed the clerk, Hamid Saleman, who advised the following: At 7:55 in the morning a subject entered the store and responded directly to the register. In a low deep voice the suspect advised Saleman to turn over all his money. Saleman first thought the suspect was joking due to the hour of the event and tone in which the statement was made.
>
> Saleman then noticed a knife the suspect was brandishing. When Saleman noticed the knife he became scared and backed away from the counter. The suspect then reached over the counter and touched several buttons on the cash register in an attempt to open it. This was later processed for DNA and fingerprints, however, the results of both were negative. The suspect at that point fled the store without any money. After exiting the front doors, the suspect fled the scene north on Parsonsburg Road in a tan Mazda car. Mr. Saleman observed the partial temporary tag registration numbers, the last numbers to be 20837. He described the suspect as a black male, approximately six feet tall, 175 pounds, wearing a dark hooded sweatshirt and dark pants. Mr. Saleman advised that he would, in fact, recognize the suspect if he saw him again.

While on scene of the robbery at the Quick Mart Detective Funk was dispatched to a second robbery with the suspect fitting the same characteristics. The second robbery occurred at Vintage Beer and Wine located at 610 Snow Hill Road in Salisbury, Wicomico County, Maryland. Detective Funk responded to the Quick Mart (sic) and met with the Clerk at that store whose name is Phyllis Richardson. Ms. Richardson advised that shortly after 8:00 a.m. she was restocking wine bottles in the store when she was confronted by a suspect armed with a knife. The suspect ordered Richardson to turn over all her money from the register. Richardson first believed that it was a joke as the suspect was speaking in a low tone and because of the hour of the day. It was not until Richardson observed the knife in the suspect's hand that she realized it was truly a robbery.

Richardson immediately walked behind the register and opened it up. The suspect stood on the opposite side of the counter and threatened Richardson until Richardson handed over the cash from the register. Richardson turned over approximately $250 in U.S. currency. The suspect then fled the store towards Shiloh Street.

Ms. Richardson described the suspect as a black male approximately six feet tall with a medium to heavy build. She indicated the suspect was wearing a dark gray hooded sweatshirt which he had pulled partially across his face and was wearing dark pants. Richardson advised that she would be able to identify him if she was to see him again.

The robbery that occurred at the Vintage Beer and Wine was captured on video surveillance. Detective Hamilton from Wicomico County Bureau of Investigation also responded to Vintage Beer and Wine located at 610 Snow Hill Road and viewed the video surveillance. She was able to observe that the suspect pulled onto Prince Street from Snow Hill Road in a gold in color Mazda four-door passenger car. The vehicle had a sunroof and appeared to be bearing temporary tags. The suspect, a black male wearing a dark gray sweatshirt and dark colored pants with black tennis shoes entered the store and approaches the counter brandishing a knife. The suspect then obtains money from the clerk and leaves the store returning to the gold Mazda and heads towards Prince Street. Detective Hamilton took two still photos, one of the car and one of the suspect, back to the Quick Mart where she showed that to Mr. Saleman just indicating if it appeared to be the same suspect that had robbed his vehicle moments before, or robbed his store moments before.

On October 15, 2013, at approximately 2230 hours the Salisbury Police Department made a traffic stop on a gold four door Mazda sedan bearing Delaware temporary registration 24 XC720837. It should be noted that the tag contains the digits 20837 which were given by Mr. Saleman during the robbery at the Quick Mart located at 7181 Parsonsburg Road. During the traffic stop officers made contact with the driver who was identified by his Maryland learners permit as the Defendant before Your Honor today, Rub[i]n Collins. During the traffic stop Collins put the vehicle in drive and fled from the scene. He was ultimately apprehended by Officer

Mitchell. Based on the similar description of the vehicle, the same digits in the tag number, a photo array was then compiled, two separate photo arrays were compiled with the suspect Rub[i]n Collins' photograph.

On October 16, 2013, Detective Funk responded to Phyllis Richardson's home in order to present her with a photographic lineup. During the lineup Richardson identified photograph two, which is a picture of Rub[i]n Arnaz Collins, to be the individual who committed the robbery of the Vintage Beer and Wine. Richardson indicated that she could not advise 100 percent that number two was the individual, however, that she was recognizing him from the eyes, the skin color and the eyebrows. She indicated that he was almost identical to the individual that robbed her. She indicated that she was hesitant to say that she was 100 percent sure due to the gravity of the situation and the desire to not falsely accuse anyone.

On October 16, 2013, Corporal Durbin Hamilton responded back to the mini mart on Parsonsburg Road and showed a photograph array of six individual photographs to Hamid Saleman. She indicated to him that the person may or may not be depicted in the photographs and asked him to look through the photographs and let her know if he recognized anyone. Saleman looked at every photograph then picked out photograph number two as the individual who robbed his store, the Quick Mart. The Defendant, Rub[i]n Collins, would be identified by both Ms. Richardson and Mr. Saleman as the individual who came into their stores on the 14th of October taking money without permission and brandishing a knife. All these events did occur in Wicomico County Maryland and the individual, Rub[i]n Collins, would be identified as the person seated next to Ms. Harvey at the defense table.

(ECF No. 12-5 at 21-26).

Case No. *807

On October 3, 2013, at approximately 12:29 in the morning Officer Ruark responded to the 7-11 located at 8:30 East Main Street, Salisbury, Wicomico County, Maryland, in reference to a holdup alarm. While driving to the alarm the Salisbury Police Department dispatch advised that it wasn't just an alarm, that an actual robbery had occurred where the individual had used a box cutter and then fled the scene. Upon arrival the officer made contact with the store employee who was identified by his Maryland driver's license as William Cody Wagner. Wagner stated that he was behind the counter with his back to the entry door, at which time the doorbell went off to notify him that someone was entering the store. Wagner stated that as he turned around to greet the customers a black male holding a razor knife said give me the money. Wagner stated he observed the suspect's face for a few seconds just before the suspect used his hands to pull the hood of his sweater around his face. Wagner advised the suspect was not wearing gloves during the robbery. Wagner advised that he opened the cash register drawer and began to gather together the five dollar bills and one dollar bills when the suspect reached

> around and took the two dollar bills from the drawer. Wagner advised that he handed the suspect the fives and ones, at which time the suspect fled the store towards Mt. Hermon Road. Wagner advised that the total amount of money stolen from the store was approximately $37 in U.S. currency. Wagner described the suspect as a black male approximately 25 to 35 years of age, approximately 5 feet 10 inches tall weighing approximately 200 pounds. Wagner further described the suspect as clean shaven, was wearing a black hooded sweatshirt and possibly black pants.
>
> CID of Salisbury Police Department took over the investigation. Detective Jason Caputo was the lead investigator. Subsequent to the robbery detectives made contact with an individual by the name of Ms. Dale. She indicated that she was the girlfriend of the suspect, Rub[i]n Collins. The robbery was captured at the 7-11 on video surveillance. That video surveillance was pulled by Detective Jason Caputo and viewed; the video showed a black male subject enter the store wearing a black hooded sweatshirt, black shorts and Nike sandals that were blue and black. The video surveillance shows the individual's face for several seconds at different point in the video, and he does resemble the Defendant, Rub[i]n Collins.
>
> The detectives met with Ms. Dale who indicated that during and preceding the month of October Rub[i]n Collins was staying at her house off and on when he had to go to work he would spend the night there and he did, in fact, have some personal possessions still at her home. The detectives asked her if they could come and look at the clothing items that he had left at her residence; she gave consent. They responded to her residence in Delaware and inside the closet in which she said were his belongings were a dark pair of black shorts that exactly resembled the shorts that were in the video as well as the black and blue Nike sandals that the suspect was wearing in the video. The Defendant did not have permission to take money out of the register. Any money given to him by Mr. Wagner was done by force. The suspect would be identified as Rub[i]n Collins, who is seated next to Ms. Harvey at the defense table. All events did occur in Wicomico County, Maryland.

(ECF No. 12-5 at 27-29).

Case No. *269

> In case K-14-0269 in which Mr. Collins is pleading guilty to DUI per se, the facts would be as follows. On October 15, 2013, Rub[i]n Arnaz Collins was stopped by the Salisbury City Police Department for suspicion of committing armed robberies as well as a tag bracket that covered the registration plate. Upon stopping the vehicle Officer Foy and Officer Kissinger made contact with the driver and the passenger of the vehicle. The driver of the vehicle was identified by his Maryland learner permit as Rub[i]n Arnaz. The passenger was a female who later stepped out of the vehicle.
>
> While Officer Kissinger and Officer Foy were standing next to the vehicle talking to the Defendant, he put the vehicle in gear and sped away from the traffic scene.

> Officer Foy and Officer Kissinger gave chase reaching speeds up to 80 miles an hour. Ultimately the vehicle could not negotiate a curve, struck a pole and flipped in the parking lot. Officer Kevin Moore responded to the scene and made contact with the operator of the vehicle, who was apprehended minutes later after he fled from the vehicle. He indicated that he saw a can of beer that was around the parking lot where the car had flipped. The owner of that parking lot indicated that he had cleaned that parking lot the night before and there was no debris in the parking lot. The Defendant, Rub[i]n Collins also admitted to Officer Moore that he had consumed four or five beers prior to driving.
>
> Officer Jesse Kissinger would have testified that upon contact with the Defendant he noticed his speech to be slurred and his eyes to be red and glassy. Officer Moore also detected the strong odor of alcoholic beverage coming from the Defendant's breath and person. Collins agreed to submit to a blood draw. That was done at approximately 1220 in the morning on October 16, 2013. The blood was drawn by Nurse Farmer of Peninsula Regional Medical Center. The blood draw was packaged according to Maryland State Police policy and procedures and sent for evaluation. The blood was tested by a certified chemist from the State of Maryland. The blood specimen was found to contain an alcohol concentration of .09 grams of alcohol per 100 milliliters of blood, which is above the legal limit of .08. All these events did occur in Wicomico County, Maryland, and the Defendant would be identified as the person seated next to Ms. Harvey at the defense table.

(ECF No. 12-5 at 30-32).

Case No. *270

> On October 15, 2013, the Salisbury Police Department made a traffic stop on a gold Mazda Millennia; the traffic stop was conducted by Officer Foy and Officer Kissinger. While speaking with the operator he fled from the traffic stop. Subsequently a chase ensued. Salisbury Police Department chased him to the area of Snow Hill Road and East Main Street. The vehicle made a right turn onto Main Street and subsequently flipped the vehicle in onto a parking lot of SOS Automotive.
>
> Officer Ryan Mitchell was in the area of Pepsi Cola on Snow Hill Road in reference to backing up Officer Kissinger and Officer Foy on the traffic stop. He witnessed the gold Mazda speed off fleeing the scene. The officers pursued the vehicle northbound on Snow Hill Road to East Main Street. The vehicle then made a right turn onto East Main Street. Officer Mitchell proceeded north to Ward Street to Route 50 and monitored the chase via the radio but was not directly involved. Officer Mitchell then proceeded to the area of Evergreen Avenue and Old Ocean City Road where he was advised via radio that the vehicle had crashed. Officer Mitchell was advised over the radio that the suspect had fled on foot.

> Officer Mitchell set a perimeter in the area of Evergreen Avenue and White Street and he was advised over the radio that the suspect's description was a black male wearing a gray sweatshirt and jeans, at which time Officer Mitchell observed an individual appear from behind a house on Evergreen Avenue walking down the driveway. Officer Mitchell made several verbal commands for the suspect to stop. The suspect then began to run on foot as Officer Mitchell approached him. After a short foot pursuit Officer Mitchell and other officers were able to apprehend the suspect after a short struggle between he and the officers, in which he resisted arrest. All these events did occur in Wicomico County Maryland, and the Defendant in that case, Ruben Collins, would be identified as the individual seated next to Ms. Harvey at the defense table.

(ECF No. 12-5 at 32-34).

Collins did not file an application for leave to appeal his convictions within thirty days pursuant to Md. Rule 8-204. This omission was one of the claims raised in his *pro se* petition for postconviction relief filed on March 5, 2021, which challenged the convictions in Case Nos. *748, *749, and *807, only. ECF No. 12-1 at 58-62. Collins's pro se postconviction petition was supplemented by appointed counsel on February 16, 2022. *Id.* at 63-72. He raised a total of eleven claims:

(1) Trial counsel "failed to define and discuss motions" with Petitioner;

(2) Trial counsel "misled Petitioner to plead guilty" by failing to "properly convey" exculpatory evidence;

(3) Trial counsel "failed to properly represent [P]etitioner[] by neglecting to assert [Petitioner]'s position" when "fail[ing] to properly analyze exculpatory evidence;"

(4) Trial counsel failed to provide Petitioner "a chance to review and consider his discovery, including the exculpatory evidence;"

(5) Petitioner was deprived of the opportunity to "explain to the court why he was dissatisfied with his counsel;"

(6) Petitioner "should have had the opportunity to discuss with counsel his entire situation, including his dissatisfaction with counsel, and to further discuss the plea agreement under the circumstances, rather than being forced to do it all in open court;"

(7) Petitioner "should have been given the opportunity to retain new counsel or represent himself[] and was entitled to a postponement to sort these matters out;"

(8) Petitioner "should have been given the 'entire litany' of voir dire before pleading guilty;"

(9) Petitioner should have been informed that an investigating detective's "credibility had been called into question" to better inform Petitioner's decision to plead guilty;

(10) Petitioner "should have had better legal representation in allocution;"

(11) Trial counsel should have filed a timely application for leave to appeal.

*Id.* at 71-72. The postconviction court held a hearing on April 6, 2023. ECF No. 12-7. On May 30, 2023, the postconviction court granted relief on Collins's claim that his trial counsel was ineffective for failing to file a direct appeal but denied his petition in all other respects. *Id.* at 145-169. The order provided Collins thirty days to file a belated appeal. *Id.* at 169.

Collins filed a notice of appeal[2] challenging his convictions in *748, *749, and *807. *Id.* at 170-175. He also filed an application for appeal to challenge the denial of the ten other claims in his postconviction petition. *Id.* at 176-181. It appears that the Appellate Court of Maryland, in a decision entitled "Guilty Plea," consolidated all petitions and summarily denied appellate relief.[3] *Id.* at 182-183. The mandate issued on August 28, 2023. *Id.* at 188.

Collins filed his federal habeas corpus petition on October 27, 2023 (date of signature). ECF No. 1. He raises four grounds for relief: (1) his plea was involuntary due to trial court coercion

---

[2] The appropriate procedure in Maryland to challenge a guilty plea is through an application for leave to appeal. *See Malvo v. State*, 269 Md. App. 567, 594, *cert. denied,* 496 Md. 447 (2026).

[3] The order reads: "Having read and considered the application of Ruben [sic] Collins for leave to appeal from the conviction and sentence that followed the entry of guilty plea, the application is hereby denied." With this order, it is unclear whether the Appellate Court of Maryland dismissed the appeal of the guilty plea, the denial of the postconviction petition, or both. Because Respondent has not asserted that Case Nos. *748 and *749 are procedurally defaulted, the Court will assume that the Appellate Court of Maryland intended to dismiss both the appeal of the guilty plea and the application for leave to appeal the postconviction petition.

and intimidation (ECF No. 1-1 at 10); (2) ineffective assistance of counsel for failure to advise him of exculpatory evidence prior to the plea proceedings (*id.*); (3) ineffective assistance of counsel for failure to postpone the plea proceedings (*id.*), and (4) ineffective assistance of counsel for failure to file a timely direct appeal. *Id.* Respondent argues that this Court lacks jurisdiction over the claims associated with Case Nos. *807 and *270; the claims associated with Case No. *269 are barred by the statute of limitations; and the claims associated with *748 and *749 lack merit.

**Jurisdiction**

On May 28, 2014, the circuit court sentenced Collins in Case No. *807 (robbery of 7-11) to imprisonment for five years, to be served concurrent with the seventeen years it ordered in Case Nos. *748 and *749. ECF No. 12-5 at 36, ECF No. 12-1 at 56-57. On the same day, the circuit court also sentenced Collins in Case No. *270 (resisting arrest) to imprisonment for eighteen-months, to be served concurrent with the seventeen-year sentence in Case Nos. *748 and *749. ECF No. 12-5 at 36-37, ECF No. 12-1 at 56-57.

The Supreme Court has made unmistakably clear that a § 2254 petitioner must, at the time his or her petition is filed, be "in custody" pursuant to the contested state conviction or sentence. *Maleng v. Cook,* 490 U.S. 488, 490-91 (1989) (citing *Carafas v. Lavallee,* 391 U.S. 234, 238 (1968)). It is equally clear that § 2254's requirement that a habeas petitioner be "in custody" pursuant to the contested state conviction raises a threshold jurisdictional question. *Id.* at 490 (stating that "[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States'") (emphasis in original). It is also well-settled that "[o]nce the sentence imposed for a conviction has *completely expired,* the collateral

consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.* at 492 (emphasis added).

Here, Collins is challenging the constitutionality of his convictions for robbery in Case No. *807 and resisting arrest in Case No. *270. But Collins's sentences for the charges in these two cases had completely expired when he filed his Petition on October 27, 2023; therefore, he was not "in custody" for purposes of § 2254. Each of his claims independently must involve the right to be released from custody. *See United States v. Thiele,* 314 F.3d 399 (9th Cir.2002) (finding that cognizable claims do not "run interference for non-cognizable claims."); *see also Mays v. Dinwiddie*, 580 F.3d 1136, 1140 (10th Cir. 2009) (finding that Section § 2254(a)'s "in custody" requirement does not apply to an expired concurrent sentence).

Collins was sentenced on May 28, 2014. The sentences in *807 for five years and in *270 for eighteen months had long expired before he filed his federal habeas corpus petition on October 27, 2023. ECF No. 1. Because Collins is challenging state convictions with sentences that had completely expired by the time he filed his federal habeas Petition, the Court lacks subject matter jurisdiction over the claims associated with *807 and *270.

**Timeliness**

Respondent argues that the claims associated with Case No. *269 (DUI per se) should be dismissed because they are untimely. ECF No. 12 at 7. The Court agrees.[4] On May 28, 2013, the Circuit Court imposed a two-year suspended sentence for Collins' DUI per se charge in Case No. *269. ECF No. 12-5 at 36. As noted above, Collins did not timely appeal his guilty plea. Although

---

[4] "The First, Third, Sixth, Ninth, Tenth and Eleventh Circuits have all held that the timeliness of a habeas petition is determined on a claim-by-claim basis…. [n]o Circuit Court has held otherwise." *Gabriel Cisneros v. United States*, No. 1:18-CV-24, 2020 WL 9934484, at *10 (S.D. Tex. Sept. 23, 2020), *report and recommendation adopted sub nom. Cisneros v. United States*, No. 1:18-CV-024, 2021 WL 2314888 (S.D. Tex. June 7, 2021), *aff'd,* No. 22-40102, 2023 WL 8433978 (5th Cir. Dec. 5, 2023)) (collecting cases).

Collins successfully achieved a belated appeal in his postconviction petition, Collins *did not include* Case No. *269. *See* ECF 12-1 at 58-62, 63-72, 174-190.

28 U.S.C. § 2244(d)(1) provides that a petition for writ of habeas corpus seeking relief from a state court judgment must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). 28 U.S.C. § 2244(d)(2), however, expressly excludes from that one-year calculation "[t]he time during which a properly filed application for State post-conviction or other collateral review ... is pending."

In this case, the one-year limitations period for filing for federal habeas relief runs from the date on which the judgment became final by the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Collins did not appeal his guilty plea through the Maryland state courts. The deadline for him to have done so was thirty days from his sentencing, or **June 27, 2014.** *See* Md. Rule 8-204(b)(2)(A). By the time Collins filed his federal habeas petition on or about October 27, 2023, well over a year had passed. Therefore, the claims associated with Case No. *269 (DUI per se) are untimely.

The limitations period is "subject to equitable tolling in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see United States v. Herrera-Pagoada*, 14 F.4th 311 (4th Cir. 2021). To equitably toll the limitations period, the petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Herrera-Pagoada*, 14 F.4th 311 (quoting *Holland v. Fla.*, 560 U.S. 631, 649 (2010)). The circumstances could involve "some kind of wrongful conduct on

the part of the [respondents]" or other "extraordinary circumstances beyond [the petitioner's] control." *Harris*, 209 F.3d at 330. Stated differently, the limitations period may be tolled only in "those rare instances where . . . it would be unconscionable to enforce [it] against the party and gross injustice would result." *Id.*

On September 3, 2026, by Court Order, Collins was given the opportunity to state why the claims associated with Case No. *269 should not be considered untimely or why he is eligible for equitable tolling. ECF No. 16. Collins failed to respond. Absent a valid reason, the Court cannot excuse the untimeliness of the claims associated with Case No. *269 (DUI per se).

**Standard of Review**

***1. 28 U.S.C. § 2254***

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 334 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or 2)

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court

conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

**2. *Ineffective Assistance of Counsel***

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

In order for Collins to obtain relief on his ineffectiveness claims, he must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Supp. 1997). The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance [of counsel] is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d) [ now § 2254(e)(1)]." *Id*. at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

**Analysis**

***1. Involuntary Plea-Trial Court Coercion and Intimidation***

In his first claim, Collins contends that his plea was involuntary because the trial court coerced and intimidated him into pleading guilty. ECF No. 1-1 at 10. Collins raised this ground for relief in his postconviction petition across several enumerated claims. *See* ECF No. 12-1 at 71-21. Collins argued in state court, as he does in his federal habeas petition, that he believed he had no choice but to plead guilty because when he sought to dismiss his trial counsel, the trial court said he could either represent himself with no time to prepare or continue with counsel he believed "underrepresented" him. *Id.* at 67-68. The postconviction court dismissed the claim (*id.* at 156-161) and concluded that "the totality of the circumstances reflect that Petitioner knowingly and voluntarily entered into his guilty plea." *Id.* at 158.

By way of context, three weeks before his guilty pleas, on May 7, 2014, Collins elected to proceed to a jury trial on yet another armed robbery case in Wicomico County, Case No. 22-K-13-746. ECF No. 12-4. The armed robbery in that case occurred at a Stop-n-Shop in Delmar, Maryland on October 2, 2013. *Id.* at 41. Collins was convicted of armed robbery, robbery, second degree assault, theft, and a handgun offense. *Id.* at 140. Collins was represented by the same counsel at his jury trial that represented him during his plea hearing on May 23, 2014. ECF No. 12-5 at 1.

The plea hearing on May 23, 2014, began with the prosecutor reciting the terms of the agreed-to plea (ECF No. 12-5 at 1-6) and Collins indicating that he understood. *Id.* at 6. During the colloquy, Collins raised his dissatisfaction with his counsel:

MS. HARVEY: And are you satisfied with -
THE DEFENDANT: No - -
MS. HARVEY: Are you satisfied with my representation?
THE DEFENDANT: No.
MS. HARVEY: Is that because of what happened in the other trial?
THE DEFENDANT: Yes.
MS. HARVEY: Okay. But did I do everything that you asked me to do?
THE DEFENDANT: No.
MS. HARVEY: May I have a moment, Your Honor?

(Ms. Harvey speaking with the Defendant off the record.)

MS. HARVEY: We have talked about the fact that we interviewed certain people and we made a decision not to call them; is that right?
THE DEFENDANT: I mean you made the decision not to call them. I wanted to call them.
MS. HARVEY: Okay. Is there anything else about this case that you have a question about that you want to ask me before you proceed with the plea?
THE DEFENDANT: No.
MS. HARVEY: Are you making this plea voluntarily?
THE DEFENDANT: Yes.

(*Id.* at 9-10). Later in the colloquy:

MS. HARVEY: Are you pleading guilty because you want to plead guilty today?
THE DEFENDANT: I have no choice. I mean my representation was not up to my par.
MS. DISHAROON: Your Honor, I don't feel like we can go forward.
THE COURT: You know, you're wasting everybody's time.
MS. DISHAROON: I won't go forward with the plea.

THE COURT: We're done with you, we're going to have a trial and you are going to face --

THE DEFENDANT: No, I'm pleading guilty.

THE COURT: No, you're not. Court stands adjourned. We'll postpone all these cases. You'll get a new date from the assignment commissioner.

THE DEFENDANT: Can I get a new Public Defender then?

MS. HARVEY: Your Honor.

THE COURT: Court stands adjourned.

MS. HARVEY: Your Honor, would you do the litany on he wants to fire me?

(Whereupon, there was a recess in the proceedings.)

MS. HARVEY: Your Honor, I'd ask that you do the litany, given the comments that were made earlier, the questioning about the voluntariness of the plea. I'd ask that you do it given the comments.

THE COURT: Well, he doesn't seem like he's very happy with you, Ms. Harvey.

MS. HARVEY: Apparently.

THE COURT: Doesn't sound like he wants you to be his lawyer. Would you stand up, Mr. Collins, I want to ask you a few questions. You indicated that Ms. Harvey had not done anything you had asked her to do. Didn't, you tell me that?

THE DEFENDANT: Yes, I mean in the previous case. I'm pleading guilty today, Your Honor, of my own will, free will, but, you know, from the previous cases I wasn't very happy. So, I mean, I'm pleading guilty today on my own free will.

THE COURT: That's not one of these five other cases, this is some other case you're talking about?

THE DEFENDANT: Yes, but it's pertaining to the same thing. So, I have to, to my own judgment, to go ahead and plead guilty, due to the discretion of this is my life that we're dealing with, you know, and I just can't throw my life around like it's a toy, you know. I do care about my life. I. have two kids that need me, you know, and I had a job.

THE COURT: Well, let me interrupt you because you did say you weren't freely doing this, you were being forced to do it.

THE DEFENDANT: No, I'm not forced to do it, I'm doing it on my own.

THE COURT: Now, is there's some indication you don't want your attorney to represent you, if you don't want Patricia B. Harvey or current counsel to represent you, I have to ask you some questions concerning your right to discharge her. Is there still a problem in your mind with respect- to Ms. Harvey being your attorney?

THE DEFENDANT: Not to that certainty. My thing, Your Honor, was with how I was being represented in my other case pertaining dealing with the same thing, which evidence was brought in that case which shouldn't have been allowed and it's like there was nothing rebuttal about it, everything was like, you know -- can I ask you a question, Your Honor, please?

| | |
|---|---|
| THE COURT: | I don't know if I know the answer, but you can try. |
| THE DEFENDANT: | Is there any way that someone being on trial, that individuals from another case that haven't been found guilty, went to court or anything, testified to prove you guilty on that in some other case? |
| MS, HARVEY: | Your Honor, if I could help. |
| THE COURT: | That's a bar review question, I don't know the answer. That's pretty complicated. What is it you want to say? |
| MS. HARVEY: | Your Honor, I think his venting is about this other case that we had where the State was able to get in information not just about the armed robbery but about a traffic incident that happened two weeks later. I objected a lot and the Court overruled my objection and certain information came in. And I'm sure he thinks it isn't fair. I've told him we would file an appeal in that case. And I think that's what he's referring to. |
| THE DEFENDANT: | And, Your Honor, I have not been to court on that charge, been - found guilty of that charge or anything. And I don't know how -- |
| MS. HARVEY: | He's talking about he didn't go to court on the traffic incident. |
| THE DEFENDANT: | That they were testifying against. |
| MS. HARVEY: | And there was a separate set of charges, in fact, it was one of these sets of charges, Your Honor. |
| THE COURT: | Does any of that have any bearing on the five cases today? Does it have any real bearing on whether or not it's a free and voluntary and knowing plea? |
| THE DEFENDANT: | No. |
| THE COURT: | Let's go back to Ms. Harvey. No one expects anybody to be 100 percent happy with his or her attorney, that's impossible because everybody is human. That doesn't mean you don't have a good attorney or a competent attorney representing you. You have a right to discharge your attorney, if you want, to fire her, if you want, but you have to understand from this point forward you will be representing yourself, I'm not going to postpone your cases. Do you understand? |
| THE DEFENDANT: | Yes. |
| THE COURT: | So, you have Ms. Harvey today. Now I'll listen to you if you want to tell me any reasons why you want to discharge her. |
| THE DEFENDANT: | I don't want to discharge her. We can just go on with it. |
| THE COURT: | All right. Well, I think that's a wise decision. |

*Id.* at 11-16. Collins went on to plead guilty (*id.* at 18-20) and received the agreed sentence of seventeen years of active incarceration. *Id.* at 36-37.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and

likely consequences. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755. The essence of a valid guilty plea is that it represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749; *King*, 17 F.3d at 153 (and cases cited therein). "[T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Collins argues that his plea was involuntary because he "was left with only two undesired outcomes: 1) to proceed, against my wishes, with a lawyer I felt had underrepresented me; or 2) to proceed, without warning or time to prepare, to plead guilty, or face some unknown disposition while

unrepresented." ECF No. 1-1 at 6. Collins argues that chose to keep his attorney as the "lesser of two evils." *Id.*

Based on all the relevant circumstances, the postconviction court found that Collins' guilty plea was voluntary. ECF No. 12-1 at 156-161. Collins is only entitled to habeas relief if he can demonstrate that no fairminded jurist could have reached this conclusion under applicable Supreme Court precedent. *Brown v. Davenport*, 596 U.S. 118, 135 (2022). That, Collins cannot show.

Collins's characterization of the plea proceeding does not overcome the "formidable barrier" to relief presented by his sworn statements in the plea transcript. *Blackledge*, 431 U.S. at 74. Indeed, the transcript reveals that after Collins expressed reservation about his representation and the court took a recess, Collins stated no fewer than four times that his plea was voluntary (*see* ECF No. 12-5 at 13, "own free will," "own judgment," "not forced to do it," "doing it on my own"). The transcript also reveals that Collins's dissatisfaction with his counsel was related to the introduction of "other crimes" evidence in his jury trial and Collins confirmed that it had no bearing on the voluntariness of his plea in this matter. *Id.* at 14-15. Moreover, Collins was advised of the maximum penalties for each charge, which amounted to 40 years. *Id.* at 10-11. Collins was acutely aware of his rights, and the potential consequences of invoking or waiving those rights considering his unsuccessful jury trial just three weeks before the plea hearing.

The plea hearing transcript reflects that Collins's decision to plead guilty was a voluntary and intelligent choice between the available alternatives. Collins's dissatisfaction with the available alternatives does not render his plea involuntary. Collins complained about an evidentiary ruling in his jury trial but offered the trial court no meritorious reason to discharge his plea counsel. Collins argues that his plea is involuntary based on the trial judge's statement that discharge of his plea counsel would mean that he would have to represent himself and the trial date would not be postponed. But what

Collins calls "coercion" and "intimidation" was compliance with the requirements of Md. Rule 4-215(e):

> ...If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel...

More to the point, Collins told the trial judge that he did not want to discharge his appointed counsel. ECF No. 12-5 at 16. The plea transcript reveals that this decision, as well as the decision to plead guilty, was measured and intelligent considering Collins could articulate no meritorious reason to discharge his counsel, he was facing a potential 40-year sentence if he rejected the plea and proceeded to trial, and he had an unsuccessful jury trial on an armed robbery charge just three weeks before.

Considering all of the circumstances, Collins's first claim for relief fails to demonstrate that "no fairminded jurist" would conclude his plea was voluntary. *See Brown v. Davenport*, 596 U.S. 118, 135 (2022). Collins's first claim for relief lacks merit and is dismissed.

**2. *Ineffective Assistance of Counsel- exculpatory evidence***

In his second claim, Collins contends that his plea counsel was ineffective for failing to advise him of "exculpatory" evidence. ECF No. 1 at 3; ECF No. 1-1 at 10. Particularly, Collins argues that his counsel should have advised him (a) the victim in Case No.*807, identified someone else in the photo lineup (ECF No. 1-1 at 7), (b) Collins was excluded as a contributor in the DNA testing conducted in Case No. *749 (*id.* at 9), and (c) Detective Hitty, who performed the photo lineup in Case No. *807 had credibility problems that could be used as impeachment evidence at trial. *Id.* at 9-10. Discussed above, sub-parts "a" and "c" of this claim pertain to Case No. *807 of which the Court lacks jurisdiction. The Court, therefore, will only address sub-part "b" on the merits.

Collins raised sub-part "b" in his postconviction petition. ECF No. 12-1 at 64. Collins testified at the postconviction hearing that he had never seen the state's discovery disclosures in

Case No. *749. ECF No. 12-7 at 27-29. The postconviction court denied Collins's claim that his counsel was ineffective for failing to show him the DNA testing, finding that Collins's testimony lacked credibility. ECF No. 12-1 at 163. Absent clear and convincing evidence to the contrary, this Court is bound to accept the postconviction court's determination that Collins in fact saw the DNA testing before his plea hearing. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

In the context of plea proceedings, the *Strickland* performance standard remains the same, but the prejudice prong of the test was enunciated by the Supreme Court as, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

Because Collins cannot demonstrate that his counsel's performance was deficient, his second claim for relief fails. Even if Collins could have proven that he did not see the DNA report before his plea, his second claim for relief fails because he cannot demonstrate prejudice. The DNA report at issue was a swab from the countertop area of the Vintage Beer & Wine store. ECF No. 12-1 at 69. The DNA report showed profiles of three individuals, none of which matched Collins. *Id.* However, this does not exculpate Collins, who concedes this point. ECF No. 1-1 at 8. The store's countertop is a common area, ostensibly touched by patrons of the store daily. Moreover, as mentioned above in the factual basis for the plea, the robbery was captured on video

surveillance. And the victim, albeit with some reservation, identified Collins from a photographic lineup. Considering the benefit Collins was receiving from a global plea to a maximum active sentence of seventeen years for three separate armed robberies and related crimes, it would have been objectively unreasonable for him to reject the plea simply because he did not see a DNA report that did not exculpate him.

The postconviction court's dismissal of Collins's second claim for relief was neither contrary to, nor an unreasonable application of *Strickland* and his second claim is dismissed.

***3. Ineffective Assistance of Counsel-Plea Performance***

In his third claim, Collins contends that his plea counsel was ineffective for performing poorly during the plea hearing. ECF No.1-1 at 9. He elaborates no further. The postconviction court dismissed the claim because Collins's allegation was similarly scant and he could not meet his burden to show that he was prejudiced by his counsel's allegedly deficient performance. ECF No. 12-1 at 167-168.

Collins's failure to identify what his counsel could have done differently to change the outcome of his plea is fatal to his third claim for relief. He merely states, "nothing of consequence was said by my attorney during my allocution." ECF No. 1-1 at 7. Conclusory allegations insufficiently demonstrate deficient performance or prejudice under *Strickland. See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations").

***4. Ineffective Assistance of Counsel- Failure to File Direct Appeal***

In his fourth ground for relief, Collins contends that his plea counsel was ineffective for failing to appeal his guilty plea. ECF No. 1-1 at 10. Collins raised this claim in his postconviction petition (ECF No. 12-1 at 71-72) and received relief in the form of a belated appeal. *Id.* at 168.

Collins filed the belated appeal, which was summarily dismissed by the Appellate Court of Maryland. ECF No. 12-1 at 174-190.

Because Collins received the relief he sought during the state court proceedings, his fourth ground for relief is moot. *See Gullet v. Singleton*, 902 F.2d 1565 (4th Cir. 1990) (citing *Lane v. Williams,* 455 U.S.624 (1982)).

**Conclusion**

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C. § 2253(c)(2). Collins may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order denying the Petition for Writ of Habeas Corpus and declining to issue a certificate of appealability follows.

October 28, 2026
Date

/s/
Stephanie A. Gallagher
United States District Judge